ELECTRONICALLY FILED
Lonoke County Circuit Court
Deborah Oglesby, Circuit Clerk
2022-Jul-20  14:27:55
43CV-22-453
C23D03 : 20 Pages

## In the CIRCUIT COURT of LONOKE COUNTY, ARKANSAS
### Civil Division

AMBER BRIDGES                                                    PLAINTIFF

v.                          Case No. 43CV-22_____

SAMSUNG ELECTRONICS AMERICA, INC.            DEFENDANT

### Complaint

1.    Plaintiff Amber Bridges ("Plaintiff") brings this action seeking injunctive and declaratory relief curtailing unlawful business practices related to consumer products designed, manufactured, distributed, sold, and warranted by Defendant Samsung Electronics America, Inc. ("Samsung" or "Defendant").

2.    For years, Defendant has produced, marketed, and sold consumer goods, including the mobile phone (the "Product") at issue in this litigation. Defendant also provides consumers with a one-year warranty for the product, itself ("Warranty").

3.    In so doing, Defendant made and continues to make multiple representations to consumers that the Warranty is subject to carveouts expressly prohibited by federal law.

4.    Specifically, Defendant states to consumers that their Warranty will be void if the consumers use third-party repair services or parts for their product.

5.    Yet this type of warranty-voiding condition, where the warranty is "tied" to exclusive repair by the manufacturer, is expressly prohibited by the Magnuson-Moss

1

Warranty Act, 15 U.S.C. §§ 2301–2312 ("Magnuson-Moss," the "Act," or "MMWA"), and its implementing regulations 16 CFR §§ 700.1, *et seq.*

6.    Magnuson-Moss allows consumers to open their appliances, electronics, and other consumer goods without voiding the warranty, regardless of what the language of that warranty says. And this fact has far-reaching implications as manufacturers, such as Defendant, have stepped up their attempts to monopolize the repair market.

7.    These intentional misrepresentations of law and fact are made to help manufacturers like Defendant maintain a monopoly on repairing the products that they sell, and on manufacturing, marketing, and selling after-market parts and accessories. Most people won't attempt relatively simple, inexpensive repairs—or use inexpensive third-party repair services—if they believe that in doing so the manufacturer subsequently will refuse to honor the warranty.

8.    Plaintiff, individually and on behalf of all other similarly situated Arkansans, seeks injunctive and declaratory relief against Defendant for its violations of Magnuson-Moss. Specifically, Plaintiff seeks to prevent Defendant from continuing to make material misrepresentations and omissions to Arkansas consumers as to their warranty rights, in violation of Magnuson-Moss.

## PARTIES

9.    Plaintiff Amber Bridges is a resident of Lonoke County, Arkansas. Within the last 12 months, Plaintiff purchased the Product from Defendant, which was—and

remains—subject to a Warranty that Defendant states will be void if Plaintiff uses a third party for repair.

10.     Defendant  Samsung Electronics America, Inc.  is  a  personal electronics manufacturer headquartered in New Jersey.        Defendant's     primary     consumer products include the Product purchased by Plaintiff, and Defendant generally oversees all aspects of these products, including but not limited to their design, manufacture, marketing, and warranty services.

## JURISDICTION AND VENUE

11.     Substantial acts giving rise to the causes of action asserted herein occurred in this State and within this venue.

12.     Jurisdiction is proper in this Court because Plaintiff resides in Lonoke County, Arkansas.

13.     This Court has personal jurisdiction over Defendant because it purposefully directs its conduct at Arkansas, transacts business in Arkansas, has substantial aggregate contacts with Arkansas, engaged and is engaging in conduct that has and had a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons in Arkansas, and purposely availed itself of the laws of Arkansas.

14.     Defendant's activities in Arkansas gave rise to the claims identified herein, both suffered by Plaintiff and by members of the proposed Class. Defendant introduces its consumer electronics into the stream of commerce in Arkansas, including the products purchased by Plaintiff and the Class, each of which are subject to the unlawful Warranty giving rise to the claims of Plaintiff and the Class.

3

15. In accordance with Ark. Code Ann. § 16-60-101, venue is proper in this Circuit because a substantial part of the conduct giving rise to Plaintiff's claims occurred in this Circuit, and Defendant transacts business in this Circuit.

## EXCLUSIVE STATE COURT JURISDICTION PURSUANT TO 15 U.S.C. § 2310

16. Exclusive jurisdiction for this Action lies with this Court, pursuant to 15 U.S.C. § 2310.

17. Magnuson-Moss authorizes injured consumers to bring suit for "legal and equitable relief...in any court of competent jurisdiction in any State." 15 U.S.C. § 2310(d)(1)(A).

18. However, the Act imposes specific limitations on the exercise of jurisdiction by federal courts, stating that "no claim shall be cognizable" in federal district court "(A) if the amount in controversy of any individual claim is less than the sum or value of $25; (B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit; or (C) if the action is brought as a class action, and the number of named plaintiffs is less than one hundred." *Id.* § 2310(d)(3)(A)-(C).

19. In this Action, Plaintiff solely seeks equitable and declaratory relief individually and on behalf of all members of the Class, in the form of Defendant removing the provision in its Warranty that violates Magnuson-Moss's anti-tying provisions. Thus, neither Plaintiff nor any member of the putative Class asserts an individual claim for damages at all, much less one valued at $25 or greater. Neither of the requirements for federal jurisdiction set forth under § 2310(d)(3)(A) or § 2310(d)(3)(B) is satisfied.

4

20.     Further, Plaintiff Amber Bridges is the only named plaintiff in this action. Because there are not one hundred named plaintiffs in this action, the requirement for federal jurisdiction set forth under § 2310(d)(3)(C) is not satisfied.

21.     Because none of the requirements for federal jurisdiction are satisfied under § 2310(d)(3), this Court has exclusive jurisdiction over this Action.

## COMMON FACTUAL ALLEGATIONS

### I.     Magnuson-Moss and Its Prohibition of Tying Provisions in Consumer Warranties

22.     Magnuson-Moss is a consumer-protection law passed in 1975 to clarify how written warranties may be used when marketing products to consumers.[1]  Specific to this lawsuit, the law prohibits warrantors from conditioning warranty coverage on the consumer's use of an article or service identified by brand, trade, or corporate name.[2]  More specifically, a warrantor cannot "condition the continued validity of a warranty on the use of only authorized repair service and/or authorized replacement parts for non-warranty service and maintenance (other than an article of service provided without charge under the warranty[)]."[3]

23.     The provision goes on to dissect an illustrative, violative statement— "This warranty is void if service is performed by anyone other than an authorized 'ABC' dealer and all replacement parts must be genuine 'ABC' parts"—stating that it violates Magnuson-Moss in two ways: first, it impermissibly ties repairs to the manufacturer, but

---

[1] 15 U.S.C. §§ 2301, *et seq.*

[2] 15 U.S.C. § 2302(c).

[3] 16 C.F.R. § 700.10(c)

5

second, "*a warrantor cannot, as a matter of law, avoid liability under a written warranty where a defect is unrelated to the use by a consumer of 'unauthorized' articles or service.*"[4]

24.     It is important to note that Magnuson-Moss does not prohibit the warrantor from disclaiming liability for defects *caused* by unauthorized repairs, but the burden is on the manufacturer to prove that the unauthorized repair caused the defect.

25.     Finally, the FTC recently clarified that the disclaimer of liability does not need to be explicit.  Instead, "a warrantor would violate the MMWA if its warranty led a reasonable consumer exercising due care to believe that the warranty conditioned coverage 'on the consumer's use of an article or service identified by brand, trade or corporate name....'  Moreover, misstatements leading a consumer to believe that the consumer's warranty is void because a consumer used 'unauthorized' parts or service may also be deceptive under Section 5 of the FTC Act."[5]

26.     The animating purpose of Magnuson-Moss's anti-tying provision was explained by then-FTC-Chairman Lewis Engman in the early 1970s in the run-up to the Act's introduction:

> This [anti-tying] provision addresses the anticompetitive practice which the Commission has opposed in numerous court actions wherein a manufacturer uses a warranty unreasonably to tie his supplementary products or services to the warranted product. This leaves the consumer in the undesirable posture of losing his warranty protection if he

---

[4] *Id.* (emphasis added).

[5] Federal Trade Commission, *Final Action: Magnuson-Moss Warranty Act Interpretations; Rules Governing Disclosure of Written Consumer Product Warranty Terms and Conditions, Pre-Sale Availability of Written Warranty Terms, and Informal Dispute Settlement Procedures; and Ad Guides*, at p. 11 (May 22, 2015) (available at https://www.ftc.gov/system/files/documents/federal_register_notices/2015/05/15052 2mag-mossfrn.pdf) ("2015 FTC Final Action")

purchases the supplementary items from another and
perhaps less expensive source—even if he does so in
complete ignorance of the warranty's provisions.[6]

27.     "In short," the FTC more recently reiterated, "[Magnuson-Moss's] anti-

tying provision bars manufacturers from using access to warranty coverage as a way of

obstructing consumers' ability to have their consumer products maintained or repaired

using third-party replacement parts and independent repair shops."[7]

28.     In its Report accompanying to 2021 Financial Services and General

Government Appropriations Bill, Congress specifically directed the FTC as follows:

> *Consumer Repair Rights.*—The Committee is aware of the
> FTC's ongoing review of how manufacturers…may limit
> repairs by consumers and repair shops, and how those
> limitations may increase costs, limit choice, and impact
> consumers' rights under the Magnuson-Moss Warranty Act.
> Not later than 120 days after the enactment of this Act, the
> FTC is directed to provide to the Committee, and to publish
> online, a report on anticompetitive practices related to repair
> markets. The report shall provide recommendations on how
> to best address these problems.

29.     Subsequently, the FTC produced a report to Congress that "synthesized

the knowledge gained from its July 16, 2019 workshop titled 'Nixing the Fix: A Workshop

on Repair Restrictions' (the "Workshop"), public comments, responses to a Request for

Empirical Research and Data, and independent research."[8] ("2021 FTC Report").

---

[6] Statement of Hon. Lewis A. Engman, Chairman, Federal Trade Commission, included in
H. Rep. No. 93-17, at 58 (1973).
[7] FTC, *Nixing the Fix: An FTC Report to Congress on Repair Restrictions*, May 2021, at p. 5
(available at https://www.ftc.gov/system/files/documents/reports/nixing-fix-ftc-report-
congress-repair-restrictions/nixing_the_fix_report_final_5521_630pm-508_002.pdf)
(last accessed April 20, 2022) (hereinafter referred to as "2021 FTC Report")
[8] *Id.*

30.     Per the 2021 FTC Report, "[e]ven when a warranty does not explicitly require that repairs be performed by the original equipment manufacturer (OEM) using OEM parts, many manufacturers restrict independent repair and repair by consumers through [*inter alia*] Product designs that complicate or prevent repair;...Policies or statements that steer consumers to manufacturer repair networks;...[and] Disparagement of non-OEM parts and independent repair[.]"[9]

31.     The 2021 FTC Report confirmed that MMWA-violative conduct was rampant in the marketplace:

> The Commission continues to receive reports of companies not complying with the MMWA. In response to staff's call for empirical research and comments related to the Workshop, several organizations reported that warranty tying continues to be prevalent in the marketplace. For example, the Education Fund of U.S. PIRG, the federation of state Public Interest Research Groups (PIRGs), submitted an October 2018 study analyzing warranties from 50 companies. U.S. PIRG concluded that 45 of the 50 companies had warranties that appeared to violate Section 102(c) of the MMWA. Likewise, the Specialty Equipment Market Association (SEMA) submitted a comment stating that it regularly receives complaints that automobile dealerships void automobile warranties if the dealership finds a specialty part (e.g., custom wheels) had been installed on the automobile, regardless of whether the specialty part caused the automobile to malfunction. Other commenters submitted information claiming that certain warrantors either expressly or by implication continue to condition warranty coverage of the use of particular products or services.
>
> ...Tying is illegal where the effect is to impair competition and harm consumers in the market for either the tying product or the tied product.[10]

---

[9] *Id.*

[10] *Id.*

## II.    Defendant's Warranty Leads a Reasonable Consumer to Believe That Third-Party Repair is Prohibited.

32.    Defendant's Warranty, and additional representations related thereto, lead consumers to believe that third-party repair will void the warranty.

33.    For example, Defendant's Warranty states, in pertinent part that it excludes, *inter alia* "Defects or damage caused by the use of accessories, products, or ancillary/peripheral equipment not furnished or approved by Samsung;...[or] Defects or damage caused by improper testing, operation, maintenance, software, installation, repair service or parts, or adjustment not furnished or approved by Samsung[.]"[11] The Warranty further states that it will not apply to batteries in the event of "(i) The use of a third-party battery charger which does not meet Samsung's specifications or has not been specifically approved by Samsung for charging the battery; (ii) Tampering, as evidenced by, for example, a broken seal or seals on the battery; (iii) The use of the battery in equipment other than the Samsung device for which it is specified; (iv) The battery was subjected to external forces beyond normal use; or (v) Battery repair not furnished or approved by Samsung."[12]

34.    While Samsung may exclude damage caused by third-party repair, modification, or parts from its Warranty coverage, it is Samsung, and not the consumer, who has the burden of demonstrating that said repair/modification/parts caused the damage. However, Samsung's warranty goes on to state that

---

[11] https://www.samsung.com/us/support/legal/mobile/#standard-limited-warranty
[12] *Id.*

If the Product has any non-warranted damage, after-market modifications or out-of-specification, or non-approved parts that impair Samsung's ability to evaluate whether damage or defects are covered by the warranty or Samsung's ability to make an in-warranty repair (e.g., a cracked screen that must first be removed), then Samsung will notify you and you will have the following options:

(i) You may have Samsung return the Product to you at your cost and, at your option, resubmit the Product for warranty evaluation of in-warranty repair after the impairing condition has been repaired, corrected, or reversed; or

(ii) You may have Samsung repair, correct, or reverse the impairing condition at your cost, prior to Samsung's provision of such warranty evaluation or in-warranty repair. Samsung will not make any warranty determinations or repairs until the impairing condition has been repaired, corrected, or reversed.[13]

35.     This is an impermissible and unlawful shifting of the burden from Samsung to the consumer. Effectively, the Warranty states that in the event that Samsung cannot prove that third-party repair, modification, or parts caused the defect in the Product, Samsung will *presume* that it did.

36.     Between the impermissible burden-shifting language and the ambiguity in Samsung's coverage exclusions, Samsung's Warranty implies that third-party repair or parts will void the Warranty.

37.     All of the above is forbidden under Magnuson-Moss. In 2018, the FTC "sent warning letters to six major companies that market and sell automobiles, cellular

---

[13] *Id.*

devices, and video gaming systems in the United States."[14]   Among the challenged

provisions included the following statements:

- The use of [company name] parts is required to keep your . . . manufacturer's warranties and any extended warranties intact.
- This warranty shall not apply if this product . . . is used with products not sold or licensed by [company name].
- This warranty does not apply if this product . . . has had the warranty seal on the [product] altered, defaced, or removed.[15]

38.     The FTC further stated that companies should review additional

promotional materials and representations surrounding their warranties, so as not to create

confusion among consumers.[16]

39.     Despite the unambiguous requirements of Magnuson-Moss, Samsung

Electronics America, Inc. continues to represent to its customers both explicitly and

implicitly that third party repair—indeed, merely *opening* its products—will void the

customer's Warranty. These Magnuson Moss-violative representations—which have been

in effect for years—still lead consumers to believe that their warranties are voided by third

party repairs.

### III.     The Significance of Third-Party Repair of Consumer Products.

40.     Beyond unlawfully proscribing customers' federal consumer protection

rights, Defendant's conduct further harms consumers by stifling the third-party repair

industry, thereby allowing Defendant (and comparable device manufacturers who engage

---

[14] FTC, "FTC Staff Warns Companies that It Is Illegal to Condition Warranty Coverage on the Use of Specified Parts or Services," (April 10, 2018) (available at https://www.ftc.gov/news-events/news/press-releases/2018/04/ftc-staff-warns-companies-it-illegal-condition-warranty-coverage-use-specified-parts-or-services)

[15] *Id.*

[16] *Id.*

in similar practices) a monopolistic grasp on the repair of its own products. This harms consumers in multiple ways.

41.     First, the stifling of competition drives up the cost of repair and limits a consumer's ability to have their products fixed in a timely manner. Commonly, a warrantor's authorized service centers will have wait times that are untenable for devices that a consumer regularly relies on. In one example, a consumer's refrigerator had a faulty compressor and the warrantor (LG) told her that its authorized servicers could not fix the appliance for up to a month.[17] Obviously, a household cannot do without refrigerated food for a month, but there are countless other appliances and devices that we rely on daily, and doing without them for weeks—or even days—can cause profound disruptions in our daily lives.

42.     This problem has become only more acute in the wake of the pandemic, when appliance repair demand surged. Use of home appliances drastically increased as people are home more, and fewer people buying new appliances as both retail operations were restricted and the supply chain was interrupted by COVID-19.[18] The rise in repair needs in turn leads to delays in warranty service. When consumers are unable to get a necessary appliance repaired in a timely manner under warranty terms, there is a real need to hire a third-party repair technician to solve the issues or attempt the repair themselves.

---

[17] US PIRG, Warranties in the Void II, (April 8, 2021) at p. 18 (available at https://uspirg.org/sites/pirg/files/reports/Warranties%20in%20the%20Void%20II_USP EF_April_2021_Final.pdf)

[18] Youn, Soo. "Ovens, dishwashers and washing machines are breaking down like never before. But there's nobody to fix them." *The Washington Post*. October 22, 2020. https://www.washingtonpost.com/road-to-recovery/2020/10/22/appliance-repair-services-pandemic/

43.     Second, it limits access to essential electronics, more broadly. Consumer electronics, in general, are the subject of ongoing shortages. An Associated Press report found that the increased demand and supply chain challenges posed by the pandemic had resulted in shortages around the country.[19] Kinks in the semiconductor supply chain are now posing an additional threat to the supply of new products.[20] Reducing barriers to repair allows older consumer products to be refurbished more easily, thereby expanding the available supply.[21]

44.     These shortages notwithstanding, Defendant's anticompetitive practices enables it (and similarly-situated companies) to force consumers to buy new products through planned obsolescence. When it costs almost as much to repair an existing product as it does to buy a new version of the same product, consumers will likely opt to buy the new product. Whereas, in a repair marketplace where costs are lowered through competition, it is cheaper to repair an existing piece of electronics than to buy a new one.

45.     Against this backdrop of scarcity, it is more important than ever that consumers be allowed to maintain and repair their products without restriction.

46.     To date, Defendant has done nothing to proactively alert consumers to their rights under federal law. Defendant's unlawful behavior, coupled with its failure to

---

[19] Jocelyn Gecker and Michael Liedtke, *AP Exclusive: US Faces Back-To-School Laptop Shortage,* (Aug. 22, 2020), https://apnews.com/article/01e9302796d749b6aadc35ddc8f4c946.

[20] Hyunjoo Jin, Douglas Busvine, and David Kirton, *Analysis: Global chip shortage threatens production of laptops, smartphones and more,* Reuters, (Dec. 17, 2020), https://www.reuters.com/article/us-chip-shortage-analysis/analysis-global-chip-shortage-threatens-production-of-laptops-smartphones-and-more-idUSKBN28R0ZL.

[21] 2021 FTC Report, *see,* Note 8, *supra.*

affirmatively alert consumers of their rights, has created and continues to create an ongoing injury.

## PLAINTIFF'S SPECIFIC ALLEGATIONS

47.     Within the last 12 months, Plaintiff purchased a new Product, manufactured by Defendant.  This Product was—and remains—subject to Defendant's Warranty.

48.     At present, Plaintiff is unable to repair her Product via a third party, independent repair service without purportedly voiding her Warranty.  However, this condition of the Warranty is unlawful, and has caused Plaintiff injury.

49.     Further, Plaintiff anticipates buying a new Product in the future, and would consider purchasing a Product from Defendant, but does not wish to have her rights under Magnuson-Moss thwarted by Defendant's unlawful tying provisions in its Warranty.

## CLASS ALLEGATIONS

50.     Plaintiff seeks class certification of the class set forth herein pursuant to Arkansas Rule of Civil Procedure 23. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23(a) and (b).

51.     Plaintiff seeks certification of a Class defined as follows:

> All citizens of Arkansas who purchased a product subject to Defendant's Warranty within the Class Period.[22]

52.     Plaintiff reserves the right to modify or refine the Class definition based upon discovery of new information or in order to accommodate any concerns of the Court.

---

[22] As used herein, and subject to Plaintiff's reservation of rights to amend her definition, "Class Period" means one year prior to the date of filing of this Complaint, through the date of class certification.

14

53.     Excluded from the Class are Defendant, and Defendant's parents, subsidiaries, affiliates, officers and directors, any entity in which any defendant has a controlling interest, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members, and members of the staffs of the judges to whom this case may be assigned.

54.     **Numerosity.** The Class is so numerous that joinder of individual members herein is impracticable. The exact number of Class members, as herein identified and described, is not known, but Plaintiff believes at least 36 Class members reside within the State. *Stephens Prod. Co. v. Mainer*, 2019 Ark. 118, 5, 571 S.W.3d 905, 908 (2019) (numerosity requirement satisfied for class consisting of 36 individuals). Additionally, the identity of Class members can be readily determined upon review of records maintained by Defendant.

55.     **Commonality.** There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual Class members, including but not limited to the following:

> i.  Whether Defendant's acts and practices complained of herein violate Magnuson-Moss; and
>
> ii. the appropriate injunctive relief to ensure Defendant no longer illegally conditions its warranties on the exclusion of third-party repair.

56.     **Typicality.** Plaintiff's claims are typical of the claims of members of the proposed Class because, among other things, Plaintiff and members of the Class sustained

15

Case 4:22-cv-00743-BSM Document 2 Filed 08/22/22 Page 16 of 20

similar injuries as a result of Defendant's uniform wrongful conduct and their legal claims arise from the same events and wrongful conduct by Defendant.

57.     **Adequacy.** Plaintiff will fairly and adequately protect the interests of the proposed Class. Plaintiff's interests do not conflict with the interests of Class members and Plaintiff has retained counsel experienced in complex litigation to prosecute this case on behalf of the Class.

58.     **Predominance & Superiority.** In addition to satisfying the prerequisites of Rule 23(a), Plaintiff satisfies the requirements for maintaining a class action under Rule 23(b). Common questions of law and fact predominate over any questions affecting only individual Class members, and a class action is superior to individual litigation and all other available methods for the fair and efficient adjudication of this controversy. The individual relief injunctive and declaratory available to an individual plaintiff is insufficient to make litigation addressing Defendant's conduct economically feasible in the absence of the class action procedure. Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense presented by the complex legal and factual issues of the case to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

59.     **Final Declaratory or Injunctive Relief.** Plaintiff also satisfies the requirements for maintaining a class seeking declaratory and/or injunctive relief. Defendant has acted or refused to act on grounds that apply generally to the proposed

16

Class, making final declaratory or injunctive relief appropriate with respect to the proposed Class as a whole.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
(Violation of the Magnuson-Moss Warranty Act,
15 U.S.C. §§ 2301, *et seq.*)

60.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

61.     Plaintiff and Class members are "consumers" as defined in MMWA, 15 U.S.C. § 2301(3).

62.     Defendant is a "warrantor" as defined in MMWA, 15 U.S.C. § 2301(5).

63.     Defendant's Warranty is a "written warranty" as defined in MMWA, 15 U.S.C. § 2301(6).

64.     Defendant's products are "consumer products," as defined in MMWA, 15 U.S.C. § 2301(1).

65.     Consistent with, *inter alia*, 15 U.S.C. § 2302(c) and 16 C.F.R. § 700.10, Defendant may not prohibit third-party repair as a condition of its Warranty.  Nor may Defendant make statements that would lead a reasonable consumer exercising due care to believe that the warranty conditioned coverage on the consumer's use of an article or service identified by brand, trade or corporate name unless that article or service is provided without charge to the consumer. 16 C.F.R. § 700.10; *see, also* 2015 FTC Final Action at 11[23].

---

[23] *See* Note 5, *supra.*

17

66.     Yet this is precisely what Defendant does through the conduct complained of herein. This includes, *inter alia*, its representation in paragraphs 32-36, *supra*.

67.     The FTC has stated, either directly through statute and regulation or through guidance, that such representations violate Magnuson-Moss and its ant-tying provisions.

68.     Defendant's noncompliant warranties have harmed and continue to harm Plaintiff and the Class members by depriving them of the warranty benefits guaranteed to them by federal law.

69.     As a result of such harm, Plaintiff and Class members are entitled to injunctive relief and corresponding declaratory relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court:

a.     Certify this case as a class action, appoint Plaintiff as Class representative, and appoint Plaintiff's counsel to represent the Class;

b.     Find that Defendant's actions, as described herein, constitute violations of Magnuson-Moss;

c.     Entered judgment against Defendant for all injunctive, declaratory, and other equitable relief sought;

d.     Award all costs, including experts' fees, attorneys' fees, and the costs of prosecuting this action; and

e.     Grant such other legal and equitable relief as the Court may deem appropriate.

Dated: July 20, 2022          Respectfully Submitted,

*/s/ David Slade* _____

David Slade (ABN 2013143)
slade@wh.law
Brandon Haubert (ABN 2013137)
brandon@wh.law
wh LAW
1 Riverfront Place, Suite 745
Tel: (501) 891-6000
Fax: (501) 222-3027

Jerry Kelly (ABN 84085)
jkelly@kellylawfirm.net
KELLY LAW FIRM, PA
118 N. Center
P. O. Box 500
Lonoke, AR 72086
Phone:  501-676-5770
Fax:  501.676.7807

*Attorneys for Plaintiff and the proposed Classes*

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: July 20, 2022                    Respectfully Submitted,

                                        */s/ David Slade* _____

                                        David Slade (ABN 2013143)
                                        slade@wh.law
                                        Brandon Haubert (ABN 2013137)
                                        brandon@wh.law
                                        wh LAW
                                        1 Riverfront Place, Suite 745
                                        Tel: (501) 891-6000
                                        Fax: (501) 222-3027

                                        Jerry Kelly (ABN 84085)
                                        jkelly@kellylawfirm.net
                                        KELLY LAW FIRM, PA
                                        118 N. Center
                                        P. O. Box 500
                                        Lonoke, AR 72086
                                        Phone:  501-676-5770
                                        Fax:  501.676.7807


                                        *Attorneys for Plaintiff and the Proposed Classes*

20